IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
and SIERRA CLUB,

        Plaintiffs,

v.                               CIVIL ACTION NO.   2:15-01488

SHEPARD BOONE COAL CO.

        Defendant.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES

### INTRODUCTION

1.     This is an action for declaratory judgment and mandatory injunctive relief and for civil penalties against Defendant for discharging pollutants in violation of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* (hereinafter "the Clean Water Act" or "the CWA") from at least one unpermitted point source on its property south of Bim and west of Wharton in Boone County, West Virginia. That point source discharges into Beaver Pond Branch of Pond Fork of the Coal River. Two privately owned ponds are located on Beaver Pond Branch upstream of its confluence with Pond Fork.

2.     As detailed below, Plaintiffs allege that Defendant—as owner of the point source—discharged and continues to discharge selenium—a pollutant designated as toxic by the U.S. Environmental Protection Agency, 40 C.F.R. § 401.15—into waters of the United States without a National Pollution Discharge Elimination System ("NPDES") Permit issued pursuant

1

to Section 402 of the Clean Water Act, 33 U.S.C. § 1342, in persistent violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

3. As further explained below, Plaintiffs allege that Defendant—as owner of the point source—discharged and continues to discharge, total dissolved solids (TDS), conductivity[1], sulfates, and other pollutants associated with alkaline mine drainage in West Virginia, into waters of the United States without a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, in persistent violation of Section 301, 33 U.S.C.. § 1201.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365 (Clean Water Act citizen suit provision).

5. On January 28, 2013, Plaintiffs gave notice of their intent to file suit to Defendant, the United States Environmental Protection Agency ("EPA"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

6. On November 12, 2014, Plaintiffs gave a second notice to the Defendant, EPA, and the WVDEP, as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

7. More than sixty days have passed since the notice and second notice were served. Neither EPA nor WDEP have commenced and/or diligently prosecuted a civil or criminal action to redress the violations. Moreover, neither EPA no WVDEP commenced an administrative

---

[1] Conductivity is a measure of how well a certain solution conducts an electrical current. It effectively measures the salinity of a solution. The ions that contribute to conductivity in coal mining discharges are pollutants under the Clean Water Act. The specific ions that primarily contribute to high conductivity in mining-influenced effluent in Central Appalachia are $Ca^{2+}$, $Mg^{2+}$, $SO_4^{2-}$, and $HCO_3^-$. See US EPA, A Field-Based Aquatic Life Benchmark for Conductivity in Central Appalachian Streams (Final Report), March 2011, at xiv, available at http://cfpub.epa.gov/ncea/cfm/recordisplay.cfm?deid=233809. This mixture of ions is widespread and consistently discharged from surface mine sites in the region, and can be differentiated from other sources of conductivity. Cormier et al, *Assessing Causation of the Extirpation of Stream Macroinvertebrates by a Mixture of Ions*, Environmental Toxicology and Chemistry, Vol. 32, No. 2, p. 277-87 (2013)

penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or a comparable state law to redress the violations prior to the issuance of the January 28, 2013 or November 12, 2014 notice letters.

8. Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the Clean Water Act violations are located in this District.

## PARTIES

9. Defendant is the Shepard Boone Coal Company, a limited Liability Company with offices in Huntington, West Virginia and owner of real property in Boone County, West Virginia.

10. Defendant is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

11. Defendant is and has been the owner of land upon which the Colony Bay Surface mine was located. This mine encompassed 1,281 acres and involved the construction of at least two valley fills. Upon information and belief, Defendant Shepard Boone has at all relevant times owned the land on which Valley Fill 5 is located.

12. Plaintiff Ohio Valley Environmental Coalition (hereinafter "OVEC") is a nonprofit organization incorporated in Ohio. Its principal place of business is in Huntington, West Virginia. It has approximately 1,500 members. Its mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, grassroots organizing, coalition building, leadership development, and media outreach. OVEC has focused on water quality issues and is a leading source of information about water pollution in West Virginia.

13. Plaintiff, West Virginia Highlands Conservancy, Inc. is a nonprofit organization incorporated in West Virginia. It has approximately 1,500 members. It works for the conservation and wise management of West Virginia's natural resources, and is one of West Virginia's oldest environmental activist organizations. The West Virginia Highlands Conservancy is dedicated to protecting our clean air, clean water, forests, streams, mountains, and the health and welfare of the people who live here and for those who visit to recreate.

14. Plaintiff Sierra Club is a nonprofit corporation incorporated in California with more than 600,000 members and supporters nationwide and approximately 1,900 members who reside in West Virginia and belong to its West Virginia Chapter. The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in West Virginia.

15. Plaintiffs' members Dustin White, Maria Gunnoe, and Vivian Stockman suffer injuries to their aesthetic, recreational, environmental, and/or economic interests as a result of Defendant's unlawful discharges of selenium, and ionic pollution measured as TDS, conductivity and sulfates. Plaintiffs' members refrain from those activities and/or enjoy them less because of Defendant's unlawful discharges. Plaintiffs' members are also very concerned about the impacts of pollution from Defendant's discharges on their friends and neighbors and on local wildlife. If Defendant's unlawful discharges ceased, the harm to interests of Plaintiffs' members could be redressed. Injunctions and/or civil penalties would redress Plaintiffs' members' injuries by preventing and/or deterring future violations.

16. At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5).

## STATUTORY AND REGULATORY FRAMEWORK

17. Section 301(a) of the CWA, 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a National Pollutant Discharge Elimination System ("NPDES") Permit issued by the EPA or an authorized state pursuant to section 402 of the CWA, 33 U.S.C. § 1342.

18. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue a NPDES permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

19. At all times relevant to this complaint, the State of West Virginia has been authorized by EPA to administer a NPDES program for regulating the discharges of pollutants into waters of West Virginia. Permits issued under this program are known as "WV/NPDES" permits.

20. Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such standard or limitation."

21. Section 505(f) of the CWA, 33 U.S.C. § 1365(f) defines and "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C § 1365(a), to mean, among other things, an unlawful act under Section 301(a),

33 U.S.C. § 1311(a), of the CWA.

22. In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant or defendants to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1365(d). *See* 33 U.S.C. § 1365(a).

23. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 for each day of each violation.

24. Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, the court may assess a civil penalty of $37,500 per day for each violation that occurred after January 12, 2009. *See* 40 C.F.R. § 19.4

25. Under Section 505(d) of the CWA, 33 U.S.C. § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

## FACTS

26. On information and belief, Shepard Boone Coal Co. has owned the surface and mineral rights of a certain tract of land designated on tax maps for Boone County, West Virginia as Parcel 52 of Map 39 (hereinafter "Parcel 52") since at least November 27, 2006.

27. On November 27, 2006, Shepard Boone Coal Co. took ownership from JPMorgan Chase Bank by Special Warranty Deed. JPMorgan Chase was the successor of The Charleston

National Bank, which had held the land at issue since at least December of 1951.

28. On January 18, 1981, the WVDEP issued SMCRA permit S001581 to Colony Bay Coal Company to operate a 1,135 acre surface mine on lands including Parcel 52. The mine was named the Colony Bay Surface Mine.

29. During the course of operation, Colony Bay Coal Company constructed Valley Fill 5, which drains into Beaver Pond Branch of Pond Fork of the Coal River. Valley Fill 5 was constructed on lands within Parcel 52.

30. During operations discharge from Valley Fill 5 was regulated by WV/NPDES permit WV0057126.

31. On August 27, 2012 the WVDEP released SMCRA permit S001581. WV/NPDES Permit WV0057126 was released on October 19, 2012. Discharges from Valley Fill 5 are no longer regulated by a WV/NPDES or SMCRA permit.

32. Valley fills are the result of the expansion of rock that occurs when mountains are blown up. Excess rock and soil are placed in nearby valleys, covering headwater streams and forming valley fills.

33. Valley fills collect, channel, and convey surface runoff and groundwater.

34. Valley fills are engineered structures. They are designed with a rock core underdrain, to direct water under the fill. They also sometimes have drainage ditches along the sides of the fill or down the center surface. The water percolating through the fill and draining along the sides and center is discharged at the toe of the fill as surface water.

35. Valley Fill 5 was designed, and upon information and belief, built with an underdrain and center drain to convey water to the stream channel located at the base or toe of the fill.

36. During mining operations, discharges from Valley Fill 5 flowed into Ponds 3 and 3a through Outfall 002.

37. Neither Pond 3 nor Pond 3a has been removed.

38. No party maintains Pond 3 or Pond 3a as a waste treatment system, and there is no longer any permitted outfall from either pond.

39. Valley Fill 5 is a point source as that term is used in the context of the CWA, 33 U.S.C. § 1362(14).

40. Valley Fill 5 conveys discharges of groundwater and surface water into Beaver Pond Branch at or near its toe.

41. Beaver Pond Branch, Pond Fork and the Coal River are each waters of the United States.

42. The instream ponds approximately ¼ mile downstream from Valley Fill 5 are waters of the United States.

43. Upon information and belief Valley Fill 5 of the Colony Bay Surface Mine continues to discharge pollutants in to Beaver Pond Branch and into two instream ponds approximately ¼ mile downstream from Valley Fill 5.

44. The Colony Bay Surface Mine operated in high selenium coal seams such as the Coalburg, Stockton, 5 Block, and Freeport B. The West Virginia Geologic and Economic Survey as well as the WVDEP associate these seams with high concentrations of selenium. The WVDEP identifies selenium as a parameter of concern when mining occurs in the Coalburg, 5 Block, and Stockton.

45. WVDEP has recognized Beaver Pond Branch is impaired for selenium and has developed a TMDL for the watershed.

46. Pond Fork is also recognized by the agency as biologically impaired.

47. On December 18, 2012, a water sampler hired by Sierra Club took water samples less than one mile downstream of Valley Fill 5 of the former Colony Bay Surface Mine. Samples were taken just upstream of the mouth of Beaver Pond Branch. These samples demonstrated a selenium concentration in Beaver Pond Branch of 10.56 µg/l.

48. Selenium is commonly found in coal seams as well as shales adjacent or near the coal strata. According to documents contained in permit files associated with the Colony Bay Surface Mine, much of this shale material was deposited in Valley Fill 5.

49. Selenium is a toxic pollutant under the CWA. 40 C.F.R. § 401.15.

50. Neither Defendant nor any other entity possesses a permit to discharge selenium from Valley Fill 5 into Beaver Pond Branch.

51. No other Valley Fills drain into Beaver Pond Branch and upon information and belief there are no other sources of selenium in Beaver Pond Branch. Accordingly, Plaintiffs allege that Valley Fill 5 is discharging selenium into Beaver Pond Branch.

52. In light of the nature of selenium discharges from surface mines and in the absence of any evidence that Defendant or any other party has made efforts to prevent future selenium discharges from Valley Fill 5, Plaintiffs allege that Defendant has committed additional unpermitted discharges since December 2012, and is in continuing violation of the Clean Water Act.

53. Additionally valley fills in West Virginia are known to discharge alkaline mine drainage, which raises the level of total dissolved solids, conductivity, and sulfates in receiving streams to levels that are harmful or hazardous to aquatic life.

54. Precipitation and groundwater percolate through overburden on the mine site and

valley fill, dissolving minerals in the rock, such that the water discharged out the toe of the fill includes added pollutants.

55. Drainage from valley fills in West Virginia is characterized by elevated levels of sulfate ions ($SO_4^{2-}$) accompanied by, among other things, calcium, magnesium, and bicarbonate ions ($Ca^{2+}$, $Mg^{2+}$, $HCO_3^-$), all of which contribute to elevated levels of ionic strength measured as total dissolved solids (TDS) and conductivity. *See, e.g.,* Bernhardt et al., *How Many Mountains Can We Mine? Assessing the Regional Degradation of Central Appalachian Rivers by Surface Coal Mining,* Environmental Science and Technology, 2012, Vol. 46, p. 8115; U.S. Environmental Protection Agency, *Final Determination of the Assistant Administrator for Water Pursuant to Section 404(c) of the Clean Water.*

56. The elevated levels of total dissolved solids (TDS), sulfates ($SO_4^{2-}$), and other ions associated with the measure of conductivity in surface coal mine drainage that are consistently found in the streams that receive discharges from valley fills cause significant adverse impacts to aquatic life communities. *See* Palmer and Bernhardt, *Mountaintop Mining Valley Fills and Aquatic Ecosystems: Scientific Primer on Impacts and Mitigation Approaches,* at 3. Those impacts result in violations of West Virginia's narrative aquatic life water quality standards. *See* 47 C.S.R. §§ 3.2.e and 3.2.i.

57. In addition to its discharges of selenium Shepard Boone is discharging high levels of ionic pollution, measured as conductivity, TDS and sulfates from the former Valley Fill 5.

58. Upon information and belief, no other valley fills or other sources of alkaline mine drainage drain into Beaver Pond Branch. Accordingly, Plaintiffs allege that Valley Fill 5 is discharging total dissolved solids, conductivity, sulfates and other pollutants associated with alkaline mine drainage into Beaver Pond Branch.

59. On December 18, 2012, a water sampler hired by Sierra Club took water samples approximately 1 mile downstream of the discharge from Valley Fill 5. The results indicated that the fill was discharging high levels of ionic pollutants.

| Sample Location | Date | Conductivity (µS/cm) | Sulfates (mg/L) | Total Dissolved Solids (mg/L) |
|---|---|---|---|---|
| Beaver Pond Branch | 12/18/2012 | 968 | 335 | 670 |

60. In light of the nature of discharges of alkaline mine drainage from surface mines and in the absence of any evidence that Defendant or any other party has made efforts to prevent future discharges from Valley Fill 5, Plaintiffs allege that Defendant has committed additional unpermitted discharges since December 2012, and is in continuing violation of the Clean Water Act.

61. Plaintiffs sent of notice of intent to sue ("NOI") postmarked January 28, 2013, to Defendant, notifying it that its unpermitted discharges of selenium violate the Clean Water Act.

62. Plaintiffs sent a second NOI postmarked November 12, 2014 reaffirming their intent to sue.

63. The NOIs also notified Defendant of Plaintiffs' intent to sue for those violations at the end of the 60-day period required by statute.

64. Plaintiffs sent the NOIs by certified mail, return receipt requested, to the following persons: Defendant; Secretary Randy Huffman, WVDEP; Shawn M. Garvin, Regional Administrator of EPA Region III; and Lisa P. Jackson, Administrator of EPA.

**FIRST CLAIM FOR RELIEF**
(Clean Water Act Violations Related to Unpermitted Discharges of Selenium, TDS, conductivity, sulfates and other pollutants associated with alkaline mine drainage)

65. Plaintiffs incorporate by reference all allegations contained in paragraphs 1

through 59 *supra.*

66. Defendant's wastewater discharges identified in the above paragraphs are discharges from a point source of sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit. 33 U.S.C. § 1311.

67. Defendant does not hold a WV/NPDES Permit or any other permit to authorize the discharge of selenium, sulfates, TDS or conductivity from Valley Fill 5.

68. Under Section 505(f) of the Clean Water Act, 33 U.S.C. § 1365(f), the prohibition against unpermitted discharges under Section 301 is an "effluent standard or limitation" subject to enforcement through the citizen suit provision at Section 505(a)(1) of the Act. 33 U.S.C. § 1365(a)(1).

69. As established by Plaintiffs' sampling, Defendant discharged selenium, TDS, conductivity, sulfates, and other pollutants associated with alkaline mine drainage into Beaver Pond Branch in violation of Section 301(a) in December 2012.

70. On information and believe, Plaintiffs allege that Defendant is in continuing and/or intermittent violation of the Clean Water Act as a result of its ongoing selenium, conductivity, TDS, and sulfate discharges because Defendant has taken no meaningful action to eradicate the underlying cause of the discharges or to obtain a permit for the discharges.

71. Unless enjoined Defendant will remain in continuing or intermittent violation of the Clean Water Act.

72. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d) Defendant is liable for civil penalties up to $37,500 per day of violation for its violations of Section 301 of the CWA, 33 U.S.C. § 1311.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

(1) Declaring that Defendant has violated and continues to violate the Clean Water Act;

(2) Enjoining Defendant from all future unpermitted discharges of selenium into Beaver Pond Branch;

(3) Enjoining Defendant from all future unpermitted discharges of TDS, conductivity, sulfates and other pollutants associated with alkaline mine drainage into Beaver pond Branch;

(4) Ordering Defendant to pay appropriate civil penalties up to $37,500 per day for each CWA violation;

(5) Ordering Defendant to conduct monitoring and sampling to determine environmental effects of its violations, to remedy and repair environmental contamination and/or degradation caused by its violations, and restore the environment to its prior uncontaminated condition;

(6) Awarding Plaintiffs' attorney and expert fees and all other reasonable expenses incurred in pursuit of this action; and

(7) Granting other such relief as the Court deems just and proper.

Respectfully Submitted,

/s/ J. Michael Becher
J. Michael Becher (W.Va. Bar No. 10588)
Joseph M. Lovett (W.Va. Bar No. 6926)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 382-4798

*Counsel for Plaitniffs*